IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN GREGORY LAMBROS,

        Plaintiff,

vs.                            Case No. 17-3105-SAC-DJW

NICOLE ENGLISH, Warden,
USP-Leavenworth,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the plaintiff John Gregory Lambros' motion for mandamus relief under 28 U.S.C. § 1361. ECF# 7. Mr. Lambros originally filed a *pro se* petition for writ of mandamus and then filed separate motions for a temporary restraining order and preliminary injunction upon the allegation that the Bureau of Prisons ("BOP") planned to transfer him to another facility causing a disruption in his prescribed cancer treatment. ECF## 1 and 5. The court found the *pro se* motions to be moot based on subsequent medical treatment given to Mr. Lambros and based on a subsequent mandamus motion filed by counsel for Mr. Lambros. ECF# 9. In the pending mandamus motion, (ECF# 7), it is alleged the defendant Warden Nicole English has refused to agree that following his parole revocation hearing in El Reno, Oklahoma, Mr. Lambros will be returned to the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth") "so that he [can] . . . continue under his doctor's care and attend his other

1

scheduled screenings." *Id.* at p. 2. The plaintiff characterizes the central issue of his motion to be whether the BOP's refusal to transfer him back to USP Leavenworth after the revocation hearing "constitute[s] an intentional interference with prescribed medical treatment?" *Id.* at p. 3. As for relief, the plaintiff first asks the court to order his transfer back to USP Leavenworth following his revocation hearing for expedited briefing and hearing of his current motion. *Id.*

Warden English responds raising challenges to standing, the failure to exhaust administrative remedies, the unavailability of relief under the Mandamus Act, and the failure to allege a prospective constitutional violation. The Warden attaches the declaration of Jason Clark, M.D., the medical officer for USP Leavenworth who is aware of this case and has reviewed the pertinent medical records on Mr. Lambros. ECF #11. Mr. Lambros has filed his reply which fails to dispute any of Dr. Clark's stated opinions and fails to provide any evidence to support Mr. Lambros' argument "that transferring him away from his treating physician will result in the interruption of his currently prescribed treatment, and that such an interruption constitutes a violation of the Eighth Amendment." ECF# 12.

The declaration of Dr. Clark states in pertinent part:

> 4. Plaintiff was diagnosed with colon cancer in November 2016. He was evaluated by Dr. Bruce Gehrke, a general surgeon, who recommend (sic) Plaintiff see a colorectal surgeon based on the complexity of Plaintiff's surgery.
> 5. On December 13, 2016, Plaintiff was evaluated by Dr. Benyamine Mizrahi, a colorectal surgeon, who recommended Plaintiff undergo a

> robotic low anterior resection. This operation was performed on December 29, 2016.
>
> 6. On January 24, 2017, Plaintiff was seen by Dr. Mizrahi for a follow-up evaluation. At this time, it was determined Plaintiff did not need chemotherapy or radiation. Dr. Mizrahi recommended continued surveillance and follow-up in three (3) months.
>
> 7. On April 25, 2017, Plaintiff was seen by Dr. Mizrahi for a follow-up in three months. He recommended continued surveillance and a flex sigmoidoscopy performed in two (2) months.
>
> 8. Plaintiff underwent the flex sigmoidoscopy on June 27, 2017. Dr. Mizrahi recommended continued surveillance and a follow-up in three (3) months.
>
> 9. Plaintiff's cancer is currently in remission. He is currently undergoing follow-up visits to ensure the cancer has not returned. He will need a blood test (CEA) and flexible sigmoidoscopy every three months for the first year of remission.
>
> 10. Plaintiff was transferred to the Federal Transfer Center in Oklahoma City, Oklahoma on June 29, 2017.
>
> . . . .
>
> 21. The BOP regularly provides continuity of care upon inmate transfers. Such transfers do not cause a significant interruption in treatment.
>
> 22. All BOP facilities, particularly MRC facilities, have experience identifying qualified physicians in the public who contract with the BOP to provide their services.
>
> 23. On June 22, 2017, I completed a re-designation referral request for Plaintiff based on his increase in care level. This request was approved on June 23, 2017, pending his United States Parole Commission hearing.
>
> 24. In my clinical opinion, Plaintiff's current medical conditions do not preclude him from transfer to another BOP facility if necessary.

ECF# 11-1. As evidenced by this declaration, the plaintiff's current medical condition is that he is at least six months past his surgery, he has been examined three times during this period, and his cancer currently remains in remission. As part of his current prescribed medical treatment for this condition, the plaintiff is to have at least two more follow-up visits at three-

3

month intervals to check on the cancer's return. These follow-up visits will include a blood test (CEA) and a flexible sigmoidoscopy.

On August 4, 2017, the defendant filed as a supplement to its response a declaration of Tess Moyer, a BOP attorney whose duties include providing litigation assistance to the United States Attorney's office on USP Leavenworth issues. ECF# 14. Ms. Meyer declares that the BOP inquired of Colorectal Surgical Associates, specifically Dr. Ben Mizrahi, to submit a document on the treatment of the plaintiff. The document signed by Dr. Mizrahi is entitled "Standard of Care Rectosigmoid Cancer Follow up" and describes the visits and tests prescribed for the plaintiff for the first two years, for the third and fourth years, and for the fifth year. With respect to the first two years, Dr. Mizrahi states in part that every three months—"office visit and carcinoembryonic antigen laboratory results (CEA);" that every six months—"office visit with a Flexible Sigmoidoscopy;" that at one year—"full colonoscopy in ambulatory surgical center." ECF# 14-1, p. 3. He further conditions that, "Imaging will be done based on exam findings or elevation in" CEA. *Id.* Finally, he ends his written document with the following: "Any qualified physician can perform the Standard of care follow up treatment; however, it would best by a Colorectal Surgeon." *Id.*

Without prejudice to Warden English's arguments on standing and exhaustion of administrative, the court takes up first whether the plaintiff is able to establish the required elements for mandamus relief. To be

eligible for relief under the Mandamus Act, the plaintiff must establish: "(1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted). "If the duty is ministerial, clearly defined and peremptory, mandamus is appropriate." *Id.* (internal quotation marks and citation omitted). Warden English contends that the plaintiff has no constitutional right to be placed in a particular correctional facility and that the BOP has broad discretion in designating the facilities where a federal prisoner will be confined. Moreover, the court lacks authority to order the BOP to perform a discretionary duty, and the plaintiff fails to show he is lacking another adequate remedy. In reply, the plaintiff distinguishes his Eighth Amendment claim as resting on the right to follow-up appointments done by his current doctor and as not resting on any claim to have his choice of institutions. Specifically, the plaintiff maintains the defendant has a plainly defined duty to refrain from violating his Eighth Amendment rights by "transferring him away from his treating physician" which would interrupt his treatment. ECF# 12, p. 8. In this regard, the Tenth Circuit has allowed mandamus relief compelling medical care for conditions in the first instance, but it has circumscribed such relief so as to not override matters coming within the discretion and professional medical judgment of prison medical officials. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir.

5

2005). The open part of this issue is whether the plaintiff has an actionable Eighth Amendment claim to see a particular treating physician for follow-up visits after cancer surgery or whether this is matter falling within the discretion and professional medical judgment of prison officials.

Warden English also argues the plaintiff cannot establish a claim of deliberate indifference in transferring the plaintiff from a correctional facility near her treating physician to a correctional facility that may be more aligned with his medical needs. The defendant points out that all BOP facilities have experience identifying and contracting with qualified physicians. For that matter, Dr. Mizrahi is not the only physician specializing in colorectal surgery. After the successful surgery, the plaintiff is only receiving follow-up appointments, as his cancer is in remission and he is receiving no chemotherapy or radiation. As evidenced by Dr. Mizrahi's letter, the plaintiff's current care is not of the kind or nature which requires such specialization, but it would be best. Moreover, Dr. Clark's medical opinion is that the plaintiff's current medical conditions do not preclude him from transfer to another BOP facility if necessary.

The plaintiff maintains he still has an Eighth Amendment claim because he has no assurance that the BOP will provide or has concrete plans for providing the prescribed follow-up treatment. In effect, the plaintiff wants to make an Eighth Amendment claim out of the adequacy of the defendant planning for the medical treatment before the decision to transfer

has been made. There is no medical evidence of record indicating the seriousness of the plaintiff's condition necessitates such planning. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 91, 104 (1976). The Tenth Circuit recently summarized the relevant law:

> "Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "Deliberate indifference has both an objective and subjective component." *Id*. To meet the objective component, "[t]he medical need must be sufficiently serious." *Id*. A medical need is sufficiently serious "if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Al–Turki v. Robinson*, 762 F.3d 1188, 1192–93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). To satisfy the subjective component, the plaintiff must show that the defendant knew that the plaintiff "faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847, 114 S.Ct. 1970). The substantial-harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

*The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016), *cert. denied*, 85 USLW 3596 (Jun. 26, 2017). Based on the follow-up standard of care prescribed by Dr. Mizrahi, the medical need of the plaintiff meets the objective test of seriousness. Dr. Mizrahi's letter also establishes that for purposes of the subjective component, the plaintiff's

follow-up treatment need not be done by Dr. Mizrahi only, but that any qualified physician could perform it with a preference for "a" colorectal surgeon. ECF# 14-1, p. 3. The plaintiff's desire for "treatment by a specialist is, . . ., insufficient to establish a constitutional violation." *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *see Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). It is true that "intentional interference with prescribed treatment may constitute deliberate indifference." *Id.* There are no substantive offers of proof or evidence that the prescribed medical treatment here is that for all of the follow-up visits the plaintiff must be seen and evaluated by only Dr. Mizrahi or by only a colorectal surgeon. Instead, the standard of care letter produced by Dr. Mizrahi shows otherwise.

In sum, the medical evidence of record presently is uncontroverted in showing no subjective component to the plaintiff's Eighth Amendment claim. The medical opinion of record is that the BOP can transfer the plaintiff to another facility and can provide the standard of care prescribed for the plaintiff. The plaintiff's motion asks the court to speculate that the BOP will not be able to meet this standard of care due to the possibility of delay associated with any transfer and due to not making concrete plans for such treatment in advance of any transfer. Not only are these arguments mere speculation, but the plaintiff is without any compelling evidence that he is without an adequate remedy in the event of a

delay. Indeed, there is no medical evidence of record showing that the plaintiff is facing a substantial risk of harm should there be delay of any length. Moreover, there is nothing of record to show that the defendant has failed or will fail to take reasonable measures necessary to abate any substantial risk of harm.

On the present state of the evidentiary record, the court declines to order an immediate hearing on the plaintiff's motion and further declines to order any transfer based on the need for a hearing. Instead, the court orders the plaintiff to come forward with evidence, proffers and arguments to show cause why his motion for mandamus relief should not be promptly denied for failure to meet the required elements of proof. The plaintiff shall respond no later than August 25, 2017, the defendant's response is due two weeks later, September 8, 2017, and the plaintiff's reply is due ten days later September 18, 2017.

IT IS SO ORDERED.

Dated this 11th day of August, 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge