IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN GREGORY LAMBROS,

        Plaintiff,

vs.                                     Case No. 17-3105-SAC-DJW

NICOLE ENGLISH, Warden,
USP-Leavenworth,

        Defendant.

MEMORANDUM AND ORDER

On August 11, 2017, the court filed its order directing the plaintiff "to come forward with evidence, proffers and arguments to show cause why his motion for mandamus relief should not be promptly denied for failure to meet the required elements of proof." ECF# 15, p. 9. The plaintiff timely filed his response on August 25, 2017, (ECF# 17), and the defendant timely filed her response on September 8, 2017, (ECF# 18). The time for plaintiff to file a reply has passed without a filing. With all relevant matters before it, the court is ready to rule.

The plaintiff recently summarized his action for mandamus relief as asking the court to order the Bureau of Prisons ("BOP") to have him transferred "back to the United States Penitentiary in Leavenworth ("USP Leavenworth") at the conclusion of his parole-revocation hearing" and "back to his treating physician" for his "prescribed cancer treatment." ECF# 17, p. 1. It is the plaintiff's position that the BOP's failure to transfer him back

1

would interfere with his prescribed care and would amount to an interruption of medical care in violation of his rights under the Eighth Amendment. The plaintiff's response, as discussed later, shows some shift in theory away from needing the care of a particular physician and, instead, toward doubting the BOP's intentions and plans for following through with the prescribed care during and after a transfer.

In its show cause order, the court looked past the defendant's arguments on standing and exhaustion of administrative remedies and focused instead on the parties' arguments whether the plaintiff's allegations and available evidence show eligibility for mandamus relief. Specifically, the plaintiff has the burden to establish: "(1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted). Warden English was asking for dismissal because the plaintiff is without a constitutional right to be placed in a particular correctional facility, because the BOP enjoys broad discretion in designating facilities for prisoners, and because the plaintiff cannot show the lack of other available and timely remedies. The plaintiff was defending that his claim was not tied to choosing facilities but to retaining his treating physician and that the BOP has a clear duty not to violate his right to receive prescribed medical care from his current physician. As part of the proceedings, the court received and

reviewed the declaration of Jason Clark, M.D., the medical officer for USP Leavenworth, who was knowledgeably informed about Mr. Lambros' condition and ongoing care. From the plaintiff's current treating physician, Dr. Mizrahi, the court reviewed a document signed by him and entitled "Standard of Care Rectosigmoid Cancer Follow up" which described the visits and tests prescribed for the plaintiff for the first two years, for the third and fourth years, and for the fifth year. ECF# 14-1, p. 3. Dr. Mizrahi concluded with, "Any qualified physician can perform the Standard of Care follow up treatment; however, it would be best by a Colorectal Surgeon." *Id.*

In that order, the court recognized a central issue was whether the plaintiff could make the legal and factual bases to an actionable Eighth Amendment claim for needing to see a particular treating physician near USP Leavenworth for follow-up visits after cancer surgery or whether this case involved no more than the discretion and professional medical judgment of prison officials to select an appropriate physician near another USP facility in following through with the plaintiff's prescribed post-surgical care and screening. ECF# 15, p. 6. The court offered this analysis based on the record as it was at the time:

> Based on the follow-up standard of care prescribed by Dr. Mizrahi, the medical need of the plaintiff meets the objective test of seriousness. Dr. Mizrahi's letter also establishes that for purposes of the subjective component, the plaintiff's follow-up treatment need not be done by Dr. Mizrahi only, but that any qualified physician could perform it with a preference for "a" colorectal surgeon. ECF# 14-1, p. 3. The plaintiff's desire for "treatment by a specialist is, . . ., insufficient to establish a constitutional violation." *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th

3

Cir. 1992); *see Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). It is true that "intentional interference with prescribed treatment may constitute deliberate indifference." *Id.* There are no substantive offers of proof or evidence that the prescribed medical treatment here is that for all of the follow-up visits the plaintiff must be seen and evaluated by only Dr. Mizrahi or by only a colorectal surgeon. Instead, the standard of care letter produced by Dr. Mizrahi shows otherwise.

In sum, the medical evidence of record presently is uncontroverted in showing no subjective component to the plaintiff's Eighth Amendment claim. The medical opinion of record is that the BOP can transfer the plaintiff to another facility and can provide the standard of care prescribed for the plaintiff. The plaintiff's motion asks the court to speculate that the BOP will not be able to meet this standard of care due to the possibility of delay associated with any transfer and due to not making concrete plans for such treatment in advance of any transfer. Not only are these arguments mere speculation, but the plaintiff is without any compelling evidence that he is without an adequate remedy in the event of a delay. Indeed, there is no medical evidence of record showing that the plaintiff is facing a substantial risk of harm should there be delay of any length. Moreover, there is nothing of record to show that the defendant has failed or will fail to take reasonable measures necessary to abate any substantial risk of harm.

On the present state of the evidentiary record, the court declines to order an immediate hearing on the plaintiff's motion and further declines to order any transfer based on the need for a hearing. Instead, the court orders the plaintiff to come forward with evidence, proffers and arguments to show cause why his motion for mandamus relief should not be promptly denied for failure to meet the required elements of proof.

ECF# 15, pp. 7-9.

**Response of Mr. Lambros**

The plaintiff characterizes the defendant's evidence of record as first, "general statements about the BOP's abilities to provide care in the abstract, not as it pertains to Mr. Lambros." ECF# 17, p. 2. And these "general statements," in the plaintiff's opinion, assume the BOP will follow its

own procedures whether or not it has the ability to do so. The plaintiff asks the court to reject these general statements and the underlying assumption based on Inspector General's critical reports and other studies done on the BOP's health-care system that were cited in Judge Posner's dissent in *United States v. Rothbard*, 851 F.3d 699, 704-06 (7th Cir. 2017)(Holding that a 24-month sentence of incarceration was not unreasonable despite the defendant's diagnosis of leukemia and his need for a prescription drug not found on the BOP's drug formulary list), *petition for cert. filed*, No. 17-297 (Aug. 22, 2017). The plaintiff would have the court find that the objective evidence shows the BOP will not follow through and provide the appropriate medical care he needs. As for case-specific evidence, the plaintiff points to the BOP's admission that the plaintiff should have been moved to a Level-3 facility after his operation, but he remained at USP Leavenworth, a Level-2 facility, for six months and has now transferred to the Federal Transfer Center in El Reno, Oklahoma, another Level-2 facility. The plaintiff opines that a delay in his treatment is a "life-threatening" risk because his ability to survive a recurrence depends in part on early detection. ECF# 17, p. 7. He likewise offers that this risk can be abated only if the BOP develops a plan for his "care at whatever facility" decided upon by the BOP and that this has not been done already shows the BOP will not adequately deal with the risk of delayed detection. *Id*. at pp. 7-8. The plaintiff says there is no evidence that the physicians now caring for him at the transfer center even have

access to his medical records. As for an adequate alternative legal remedy, the plaintiff denies there is any and repeats his opinion that "a delay in his medical care would likely result in the undetected return of his cancer, which would put him at substantial risk of death. " *Id*. at p. 9. The plaintiff cites general statements from the Mayo Clinic's website on the diagnosis and the symptoms and causes of colon cancer. *Id*. at 10.

**Response of Warden English**

The defendant Warden English updates us as to Mr. Lambros being currently housed at the Federal Transfer Center in El Reno, Oklahoma, in anticipation of his parole revocation hearing presently scheduled for October 9, 2017. ECF# 18, p. 1. The defendant challenges the plaintiffs' "broad sweeping" generalizations about the BOP's medical care of inmates as insufficient to justify mandamus relief for prospective medical care. The defendant points to her submitted expert medical evidence that shows the plaintiff has no "subjective component" to his Eighth Amendment claim. The defendant also submits the declaration of Dr. George Petry, clinical director at the El Reno Transfer Center, who has overseen the plaintiff's medical care at this facility. Dr. Petry declares that the plaintiff's medical records were reviewed, that he has been seen by medical providers on five occasions since his arrival, and that Dr. Petry has had "multiple informal visits with inmate Lambros to discuss his treatment and address any of his concerns." ECF# 18-1, p. 2. Dr. Petry also noted that Mr. Lambros is scheduled for his

next blood testing CEA during the week of September 25th which will be followed up with a meeting and discussion of results. The defendant notes the plaintiff has no evidence that he is not receiving adequate medical care. Instead, the record is plain that the plaintiff has received the necessary medical care for screening and treatment of post-operative cancer in remission. There is nothing indicated in this case to show that the plaintiff will not continue to receive the same adequate medical care upon transfer, and the plaintiff's own speculation to the contrary does not meet his burden. The defendant notes that the plaintiff's arguments and broad attacks on the BOP's operations or general references to colon cancer treatment are not substantive evidence impacting the court's conclusion that, "there is nothing of record to show that the defendant has failed or will fail to take reasonable measures necessary to abate any substantial risk of harm." ECF# 18, p. 6. The defendant asks the court to find that the plaintiff has failed to satisfy the strict requirements for mandamus relief, to deny the plaintiff's motion, and to dismiss the action.

**Analysis and Holding**

The plaintiff is consistent in asking that this court exercise its mandamus power and so order the BOP to transfer him back to USP Leavenworth where he can remain under the care of his current treating physician and can avoid the risk of interrupting his currently prescribed medical treatment. As already discussed above, the court's show cause

order laid out its findings regarding the plaintiff's lack of proof on the required elements for mandamus relief on his Eighth Amendment claim. The plaintiff does not challenge the substance and relevance of the evidence on which those findings were based. Nor does he take issue directly with the sufficiency of that evidence by itself to sustain the court's findings.

Instead, the plaintiff would have the court reconsider, recast, and even reject the reliability of the medical opinions of these different physicians in light of investigative reports on the BOP's general practices of medically caring for its inmates. At most, these reports offer statistical generalizations pertinent to policy making, but they lack any specific connection to the particular medical care given or to be given to the plaintiff here. At most, these statistical generalizations may entitle a court to indulge some skepticism in judging any blanket representations from the BOP about always providing inmates with adequate and appropriate medical care. Such evidence, however, cannot substitute for or rebut the actual medical evidence and the treating physicians' opinions on the care given to the plaintiff and on the medical ability of other facilities and physicians to provide the same care upon an appropriate transfer.

The plaintiff asks the court to grant him relief because he believes these investigative reports justify a litigable concern over whether the BOP will do what it says. The court declines the plaintiff's request to open this door to litigation for every inmate with a serious medical condition

to question the BOP's intentions and thereby state an Eighth Amendment claim. The evidence of record shows that the BOP has provided real medical care adequate for the plaintiff's condition. The plaintiff's housing in a Level-2 facility like that at USP Leavenworth, which remains acceptable and preferable to the plaintiff at this point, does not evidence any intention or practice against providing adequate medical care of the plaintiff. The plaintiff apparently does not desire a transfer to a Level-3 facility and does not attempt any showing that a delay in this transfer poses any risk of substantial harm. The actual medical evidence of record shows the BOP's awareness, concern, and intention to care for the plaintiff's condition. The plaintiff's worries and anxieties based on these investigative reports and on general statements about the medical care of colon cancer simply do not create a litigable concern that the BOP's handling of his medical care during and after a transfer will necessarily pose a substantial risk of harm to him. Nor is mandamus relief necessary or appropriate just to meet the plaintiff's personal wishes for his future medical care to be exactly the same as what he has received and to come with the guarantee of no delay in any degree or respect. All of the evidence of record points to the BOP's ongoing effort to provide medical care that is adequate, reasonable, and appropriate consistent with the post-surgical care and screening prescribed by Dr. Mizrahi.

The court incorporates from its prior order the controlling law and relevant findings based on the medical evidence that continues to stand unrefuted. These findings sustain the conclusions that the BOP is aware of Dr. Mizrahi's prescribed post-operative care and screening, has followed Dr. Mizrahi's recommendations, and has plans to continue this care during the plaintiff's current transfer and any future transfers. The court is likewise persuaded from the evidence that the BOP is equipped and intentioned to consider the plaintiff's medical care needs in any future transfers. Moreover, the medical evidence of record demonstrates that the BOP has the facilities, personnel, and capability to contract with qualified public physicians to provide the plaintiff with all the care recommended by Dr. Mizrahi. The plaintiff simply has not carried his burden of showing he is clearly entitled to mandamus relief, as his worries do not justify any court-ordered relief at this time and any arguable concerns over delayed detection do not present themselves as peremptory matters outside the discretion and professional medical judgment of prison medical officials. The plaintiff has not shown through relevant medical evidence that he faces a substantial risk of harm from the manner in which the BOP is planning and executing any of his transfers.

The plaintiff's desire for treatment by a specialist or by a particular doctor is "insufficient to establish a constitutional violation." *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *see Duffield v.*

*Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). It is true that "intentional interference with prescribed treatment may constitute deliberate indifference." *Id.* The plaintiff has not come forward with any proof or evidence that the medical treatment prescribed or recommended for him must be conducted by only Dr. Mizrahi or by another colorectal surgeon. The standard of care letter from Dr. Mizrahi shows otherwise.

The court remains convinced that the plaintiff's claim for mandamus relief would require this court to speculate that the BOP will not be able to meet this standard of care due to poor intentions, poor execution, or poor planning. The plaintiff's evidence is not of the kind or quality to carry this significant burden. The plaintiff offers nothing but conjecture that <u>any</u> delay with <u>any</u> of the screening measures would create a substantial risk of harm to him. Nor can this conjecture sustain the plaintiff's burden of showing he is without an adequate remedy in the event of a possible delay. Because the plaintiff has failed to meet the strict requirements for mandamus relief, the court hereby denies the plaintiff's motion and dismisses the action.

IT IS SO ORDERED.

Dated this 27th day of September, 2017, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge